CHIEF JUSTICE PRYOR
delivered the opinion of the court.
Tbis case has been heretofore in this court, and is an action in equity instituted in the court below by the appellant Yocum against the appellee Foreman for a settlement of the partnership accounts between them as keepers of a hotel in the town of Taylorsville. The written articles of "partnership were made the basis of the action, and on the former hearing the judgment was reversed at the instance of the appellee Foreman (then appellant) for the reason that parol evidence had been improperly admitted, contravening the stipulations of the written contract, there being no allegation of either fraud or mistake in its execution. On the return of the case the present appel *496 lant, being the plaintiff in the action, filed an amended pleading, alleging that by the terms of the contract of partnership the defendant (appellee) was to board him free of charge, and by a mistake of the parties and the draughtsman this stipulation was not inserted in the writing. An issue was made on this pleading, and a judgment rendered in favor of the appellee, by which he was allowed his claim for board, and upon a full settlement of their accounts the appellant was adjudged to be indebted to the appellee in the sum of $113.80. There is much proof in the record of the admissions made by the appellee conducing to show that he was to make no charge against the appellant for board; while on the side of the appellee it appears that the contract was reduced to writing by an attorney, at the instance of both parties, and he has no recollection of any such agreement, and could not well have omitted this important feature of what is now claimed by the appellant to have been the contract between them. Besides, the appellant, in his original petition, alleges that the writing declared on is the contract between them, and makes no effort to reform the writing until the judgment was reversed on the former appeal.
It is true these parties had been partners for many years, and no charge for board had been made by appellee; still, this may be accounted for from the fact that no settlement had been made of their partnership accounts, and the length of time permitted to elapse, before any effort at a settlement, has caused the chancellor much difficulty in making an equitable adjustment of their accounts.
After the issue had been fully made, and the cause ready for hearing, the appellant offered to plead the statute of limitations to a portion of the claim for board, and the court refused to permit this pleading to be filed. This was not an abuse of discretion, and particularly when the appellee, by his answer, setting up his claim for board, had admitted the validity of payments by the appellant of the individual indebted *497 ness of the appellee, no doubt with a view of having a just and fair settlement, and to which he might have pleaded the statute. Both parties, after the offer by appellant to file this amended pleading, attempted to rely on the statute, and the chancellor very properly denied them this right.
The weight of the evidence may indicate the existence of a verbal contract between the parties prior to the execution of the written agreement, showing that no charge was to be made for board; still, when the contract is reduced to writing, and is treated by all the parties as the contract for nearly eleven years, without any discovery of a mistake as to its terms, proof only of the admissions Of one of the parties, with other proof contradicting its terms, can not be held sufficient to authorize the chancellor in holding that the mistake has been clearly established. The well-recognized rule is, that dear and strong proof of the mistake must be made before a court of equity will grant relief; and the chancellor acted properly in refusing to reform the contract between the parties, and the settlement of their accounts made in the court below should not be disturbed.
The important question in this case arises on the motion made by the appellee to quash the sale of the tavern property made under the erroneous judgment subsequently reversed by this court. When the ease was remanded and another settlement had in accordance with the mandate and opinion of this court, the appellee, instead of being indebted to the appellant in the sum of $2,000, obtained a judgment against the latter for the sum of $113.80. The appellant was then notified that a motion would be made to quash the sale, of appellee’s property, made by the sheriff under the first judgment, and on the hearing of this motion the sale was quashed and restitution ordered. A,fter notice of this motion the sheriff conveyed the property to the appellant, and the latter now maintains that, although the plaintiff in the erroneous judgment and the purchaser under it of appellee’s property, he is entitled *498 to the benefit of his purchase notwithstanding the reversal. The general rule on the subject of sales under execution is that, when the officer, in whose hands the execution is placed, can justify his acts under it, the purchaser of the property sold by virtue of the execution-sale acquires a valid title as against the defendant; and in regard to judicial sales many authorities might be cited recognizing the doctrine, that the reversal of a judgment, by virtue of or under which the property was sold, does not affect the title of the purchaser, although he is the plaintiff in the judgment.
It must be conceded that many of the modern authorities establish a contrary doctrine by making the purchase, by the plaintiff in the judgment, an exception to the general rule. They hold that a reversal does not affect the title acquired by a stranger, but operates so far as the plaintiff is concerned to nullify all proceedings Under it.
The decisions in many of these cases have been regulated by statutes providing that “property acquired by a bona fide purchaser, under a judgment subsequently reversed, shall not be affected by such reversal.” In Iowa and other states such enactments are to be found, and in determining the question as to who is a bona fide purchaser, the plaintiff in the erroneous judgment is not permitted to derive any benefit under it, and in fact the validity of judicial sales under some of these statutes is made to depend upon the knowledge the purchaser has as to the pendency of an appeal. (Twogood v. Franklin, 27 Iowa, 244.) These statutory regulations are contrary to the general doctrine in regard to judicial proceedings, and must lessen the marketable value of titles as well as impair confidence in judicial sales. Cases are found also, in the absence of any enactment, holding that the plaintiff, if the purchaser, will not be allowed to hold the property after reversal, but must make restitution. This rule requires the purchaser, from the plaintiff, to make inquiry as to the result *499 of the litigation • on the pending appeal, if the purchaser, after reversal, is in no better condition than the plaintiff; so that in departing from the recognized rule on the subject, and in the attempt to make an exception by reason of exceptional cases of great hardship that now and then appear, we lose sight of the necessity of maintaining judicial sales, and attach less importance to the action of the chancellor, than is done with reference to the ordinary transfer of property, from one party to the other.
Freeman on Judgments says “ The reversal of a judgment by any competent authority restores the parties litigant to the condition in which they were prior to its rendition.” Still he maintains that a purchase by the attorney of the plaintiff, if he can show that he has paid the money out of his own funds, will entitle him to hold the property. This rule, if established to prevent what may be regarded as injustice to the defendant, will not prevent the plaintiff, who has made a bargain by his bidding, from disposing of the property at least before a reversal, and if the attempt is then made to compel the plaintiff to account for the value of the property, the validity of such sales is not only rendered so uncertain as to drive away competition in bidders, hut the chancellor’s order of sale, instead of ending the litigation, will originate a cause of action in almost every instance of a reversal in favor of the defendant against the purchaser.
Borer on Judicial Sales lays down the correct rule; he says: “ The title acquired at a decretal sale of lands made by a court in the exercise of competent jurisdiction, is not rendered invalid by the reversal of the decree for mere irregularity or error. This, too, although the purchaser was a party to the suit in which the decree was made.” The decisions in this state do not militate against this rule, but sustain the conclusion that there is as much reason for protecting the interest of the plaintiff who purchases, as that of a stranger.
*500 This court, as early as the year 1827, in the case of Parker’s heirs v. Anderson, reported in 5 Mon. 445, recognized this doctrine and has followed it in many subsequent decisions. In the cases of Amos v. Stockton, 5 J. J. Mar. 638; Clark v. Farrow, 10 B. Mon. 446; Benningfield v. Reed, 8 B. Mon. 102; Gossom v. Donaldson, 18 B. Mon. 230, we find this principle distinctly announced, and it is now too late to question a principle so long settled for no other reason than the seeming injustice to the party against whom the erroneous judgment has been rendered in a particular case.
This court, in order to relieve the appellee, must decline to follow a rule recognized and administered as the law of this state for more than half a century, under which exceptional cases have perhaps arisen, troubling the conscience of the chancellor; but as a rule of universal application, it is dictated by the strongest considerations of public policy. Titles acquired at judicial sales, made under a judgment rendered by a court of competent jurisdiction, must be deemed inviolate, and regarded as a fixed rule of property in this state. The chancellor, or the court rendering the judgment of sale, becomes the vendor of the property, and the sheriff or commissioner directed to execute the judgment is but the agent of the court, and, when the sale is made, if in equity, must make his report to the chancellor that he may confirm or reject it. All parties in interest may except to the report of sale, and for sufficient cause shown can prevent a confirmation, but when the sale is confirmed the chancellor loses all power over it, except during the term at which the order is made, and the remedy of the party is by an appeal from the order of confirmation, if there are sufficient grounds for setting aside the sale.
The case of Coleman v. Trabue, reported in 2 Bibb, and relied on by counsel for the appellee, fails to decide as to the rights of a purchaser who is the plaintiff in the judgment. The only *501 utterance of the court on the subject in that case is, that when a stranger purchases “Under a fieri facias, issued on a judgment which is afterward reversed, the defendant shall not be restored to the property sold, but to the money for which it sold.” The reporter, in the marginal notes, has interpreted that decision as meaning that if the plaintiff had been the purchaser the reversal of the judgment would have invalidated the sale; but this court, in the subsequent case of Williams v. Cummins’s adm’r, 4 J. J. Marshall, on noticing this error, said, “It is apparent, upon an examination of the opinion, that it contains no such principle.”
The doctrine as maintained by this court was reviewed by Justice Field, of the Supreme Court, in the case of South Fork Canal Co. v. Gordon, reported in 2 Abbott, 485, in which, after quoting at much length from the decision of this court in the case of Parker’s heirs v. Anderson, he proceeds to say, “With the views thus forcibly expressed we fully concur.” This court m that case said: “The doctrine is well settled at law that estate sold under a writ of fieri facias will be retained by the purchaser, though the judgment upon which the execution issued may be afterward reversed; and the rule is the same in equity, where land is sold under the decree of a court of equity and the decree is afterward reversed. . . The parties to a judgment or decree are equally, with all others, at liberty to bid and purchase property exposed for sale under the authority of a judgment or decree; and there is the .same reason for protecting the same interest acquired by a party under a purchase as that of a stranger.”
This rule not only encourages bidding, but is made to rest upon the principle established in the cases referred to, that all persons have the right to rely upon the validity of the judgment and to be protected in sales made under it. The error of the court is not to be made that of the parties to the record. They purchase because they know the court *502 had jurisdiction of the subject-matter and the parties, and has ordered its commissioner to make the sale. The validity of judicial sales depends upon the jurisdiction of the court rendering the judgment, and, when this fact is conceded, parties to the record who are purchasers, as well as strangers, will be protected, and the reversal of the judgment on an appeal will not divest them of title. Such has always been the rule in this state, and if cases of injustice to the debtor occasionally arise, by reason of the rule, they have never been of sufficient importance to attract legislative attention.
The judgment of the court below quashing the sale is alone reversed, and cause remanded for further proceedings consistent with this opinion.