## Taulbee et al. v. First Nat. Bank of Jackson et al.
## First Nat. Bank of Jackson v. Taulbee et al.

June 13, 1939.

J. Brack Howard, Judge.

E. C. Hyden for appellants W. P. Taulbee et al.

Grannis Bach and Williams & Allen for appellant First Nat. Bank.

Williams & Allen for appellee Perry Taulbee et al.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming in part and reversing in part.

On December 23, 1929, the Powell-Hackney Grocery Company, a corporation, filed an action at law against Seldon Taulbee, W. P. Taulbee and Perry Taulbee, seeking to recover of the defendants $1,790.35 on account for goods sold them, alleging that the defendants were partners doing business under the firm name of Seldon Taulbee and Company. On March 11, 1930, W. P. Taulbee and Perry Taulbee filed answer denying that they were members of the firm of Seldon Taulbee and Company. On July 10, 1930, plaintiff filed his reply, alleging that when the account was opened W. P. Taulbee stated that he was a member of the firm; that the goods were sold by the firm on reliance of that statement and that W. P. Taulbee and Perry Taulbee had held themselves out as members of the firm and had allowed Seldon Taulbee to hold out and represent to the public generally that they were members and that they were thereby estopped from denying such fact.

On August 15, 1933, plaintiff filed an amended petition alleging that on August 21, 1930, W. P. Taulbee, while a member of the firm of Seldon Taulbee and Company, together with his wife, Dora Taulbee, with a fraudulent intent to cheat, hinder and delay his creditors and the creditors of such firm, conveyed certain land described in the petition and all the property then owned by him to his seven children. His wife and chil-

dren were made parties defendant. On July 9, 1935, W. P. Taulbee and his wife, Dora Taulbee, and three of their children, Golden Mullins, Raymond and Marie Taulbee, filed answer to the amended petition traversing the allegations thereof. This case was set for trial at various terms of the court but for reasons not appearing in the record did not come to trial at such times and on June 27, 1936, upon motion of the plaintiff, concurred in by defendants, it was transferred to equity docket.

In February 1934, the First National Bank of Jackson, hereinafter referred to as the bank, instituted an action in equity against Perry Taulbee and Virgie Taulbee, his wife, alleging that it had theretofore recovered judgment against Seldon Taulbee, W. P. Taulbee and Perry Taulbee on two notes, one for $700 and the other for $24.50; that it thereafter caused execution to be issued on such judgment on which the sheriff made return of "no property found"; that at the time of the execution of the notes and the recovery of the judgment thereon, it had a mortgage lien on real estate of Perry Taulbee and his wife to secure a note for $1,000, all of which had been paid except $350 which was due April 5, 1934; that the mortgage contained the following provisions:

"This mortgage shall also secure any additional sum or sums of money advanced or loaned by the second party to the first party and also shall secure any other indebtedness of the first party that may come in possession of the second party during the continuance of this mortgage, not to exceed the aggregate sum of $2000, the notes signed by both, or either one of the above named parties;"

that by reason of the quoted provision of the mortgage it had a mortgage lien to secure the payment of the notes which had been reduced to judgment and also the balance of the note mentioned in the mortgage and it prayed judgment for such sums and for the enforcement of the mortgage lien.

Perry Taulbee and Virgie Taulbee filed answer in which they denied that either of them were liable on the notes for $724.50 and denied the other material allegations of the petition with respect to the notes and mortgage. They further alleged that Perry Taulbee signed the notes as a matter of accommodation and as surety for W. P. Taulbee and that it was understood that same were obligations of the latter and he received the pro-

ceeds thereof; that at the time of the execution of the notes W. P. Taulbee was solvent and the owner of about 400 acres of land in Breathitt County of a value of more than $4,000 which is described in the pleading; that after procuring the signature of W. P. Taulbee to the notes and in order to cheat, wrong and defraud the plaintiff and to escape and evade liability, W. P. Taulbee and Dora Taulbee, his wife, wrongfully, fraudulently and without consideration, attempted to convey all their real estate consisting of 400 acres described to their children, Golden Mullins, Mattie Taulbee, Marie Taulbee, Raymond Scott Taulbee, Roger Taulbee, Edna Taulbee and Paul Taulbee, by deed bearing date August 21, 1930; that the conveyance was made as a result of a fraudulent collusion between W. P. Taulbee and wife and their children; that W. P. Taulbee and his wife and children should be summoned as defendants and the deed referred to should be adjudged to have been made without consideration and fraudulently; that the lands attempted to be conveyed should be subjected to the demand of plaintiff and they prayed for relief accordingly.

W. P. Taulbee, Dora Taulbee, Golden Mullins, Mattie Taulbee, Marie Taulbee, and Raymond Taulbee filed answer traversing the allegations of the cross-petition against them. Thereafter plaintiff filed an amended petition setting out with more detail the execution of the mortgage by W. P. Taulbee and Virgie Taulbee and the indebtedness secured thereby and the amount they were entitled to recover on the original indebtedness. The allegations of the amended petition were traversed by answer. By a still later amended petition the plaintiffs alleged that certain of the original indebtedness secured by the mortgage had been paid.

On motion of plaintiff and after evidence had been heard in each of the actions above referred to, they were by order entered on the 16th day of November, 1937, consolidated. On the following day, W. P. Taulbee tendered and offered to file his amended answer in the consolidated cases and amended answer and counter-claim of Dora Taulbee, Mattie Taulbee and Golden Mullins therein, and moved the court to set aside the order of submission and the order consolidating the two causes, to permit the amended pleadings to be filed, and for an order consolidating the two causes with the case of Golden Mullins v. Thomas Fields & Co., then pending,

and that all these actions be heard and tried together. The motion was overruled but the answer of W. P. Taulbee and the amended answer and counterclaim of Dora Taulbee, et al., were marked "tendered and offered" and made a part of the record. In the amended answer of W. P. Taulbee offered to be filed, he alleged that in the action of Golden Mullins v. Thomas Fields & Company, the title to the land in controversy was involved and that Thomas Fields & Company were attempting to subject same to payment of the debt claimed to be due it by W. P. Taulbee; that proof had been taken in that action and it should be consolidated with the other two actions. He further alleged that since taking of proof in the case of Powell-Hackney Grocery Company against him and others, O. H. Pollard, who was the original attorney for the grocery company, had died and another attorney had appeared for the plaintiff; that at the close of the evidence for plaintiff in the Powell-Hackney Grocery Company case he had made an offer of compromise and settlement of all three of the cases which the deceased attorney on behalf of all plaintiffs had agreed to accept provided other attorneys would consent thereto; that thereupon the parties ceased taking evidence and no further steps were taken until plaintiffs began pushing for trial; that the order of submission should be set aside and all the causes consolidated and the proof heard in each of the cases be heard and considered in all. He further alleged that at the time the deed of conveyance was attacked in the cases and at all times since, he was a bona fide resident of Breathitt County with a family dependent on him for support; that if the deeds from him and his wife to their children be set aside he was entitled to have allotted a homestead in that portion of the property in the deed owned by him of a value of $1,000 and that same should be set apart and allotted to him so as to include the residence, outbuildings, etc.

In the amended answer and counterclaim of Dora Taulbee and Mattie Taulbee and Golden Mullins, it was alleged that Dora Taulbee was the sole owner of one tract described in the pleadings which was embraced in the deed sought to be set aside and that she was the owner of an undivided half interest in another tract embraced in the deed; that she was never indebted to any of the plaintiffs in the consolidated action in any way and that no part of her property was liable for any of

the debts sued on; that if the deed from W. P. Taulbee and herself to their children should be cancelled, she was entitled to have same done only as to the land owned by W. P. Taulbee at the time of the conveyance and that she was entitled to be restored to the title to the land owned by her and described in the deed. Golden Mullins alleged that at the time the property in controversy was conveyed to her and the other children of the grantors her father was indebted to his father, Silas Taulbee, in the sum of $900 evidenced by a mortgage on the land and that she, as a part of the consideration for the conveyance, paid off the mortgage which was prior and superior to any lien or claim of any of the plaintiffs or to any claim of Perry Taulbee; that if the conveyance should be set aside she was entitled to be adjudged a lien on the tract of land described in the mortgage superior to any and all of the liens asserted in the consolidated actions. Mattie Taulbee alleged that as part of the consideration of the conveyance to the children she had paid to C. L. Terrill, father of Dora Taulbee, the sum of $1,100 which W. P. Taulbee owed the former and that she took an assignment of the note evidencing the indebtedness and was the owner and holder thereof; that the note represented purchase money on a tract of land conveyed by C. L. Terrill on some of the land in controversy and that if the deed should be cancelled she was entitled to a lien thereon for the sum of $1,100; that since the deed was made to her and the other children she in good faith believing that she was the owner thereof and her title thereto was valid, had placed thereon improvements of a value of $850 which had advanced the vendible value thereof by said sum and that if the deed be cancelled she was entitled to a lien on the land, prior and superior to the liens of any of the plaintiffs.

The chancellor adjudged that in the action of the bank against Perry Taulbee and wife, all of the indebtedness for which the mortgage was executed by them to the bank had been paid off and discharged; that the two notes for $700 and $24.50 respectively referred to in the pleadings were not secured or covered by the mortgage but those notes were notes of Seldon Taulbee and Company; that the bank recover of the makers of the notes the amounts thereof with interest and costs. It was further adjudged that Seldon and W. P. Taulbee were members of and constituted the partnership firm of Seldon Taulbee and Company and the indebtedness evi-

denced by the note was the indebtedness of Seldon Taulbee and Company and that Perry Taulbee was surety on the notes; that the Powell-Hackney Grocery Company recover of Seldon and W. P. Taulbee the sum of $1,790.35 with interest and all costs; that the deed executed by W. P. Taulbee and Dora Taulbee to Golden Mullins and their other children above named be set aside, cancelled and held for nought and that the land be subjected to the payment of the amount adjudged to the bank and the Powell-Hackney Grocery Company and that the master commissioner sell the land or so much thereof as might be necessary to pay the indebtedness, interest and costs.

To all of the judgment W. P. Taulbee, Dora Taulbee and the seven children objected, excepted and prayed an appeal which was granted; and to so much thereof as adjudged that the bank did not have a lien on the land described in the mortgage from Perry and Virgie Taulbee to it to secure the payment of $700 and $24.50 notes filed with its amended petition, the bank objected, excepted and prayed an appeal which was granted. W. P. Taulbee and wife and children have appealed. The bank has entered a motion to be permitted to prosecute an appeal on a record filed by W. P. Taulbee, et al., and also motion to consolidate the appeals, which motions have been sustained; and the appeals having been heard together will be disposed of in one opinion.

It is first argued by counsel for W. P. Taulbee, et al., that the court erred in consolidating these actions and refusing to consolidate with them the case of Golden Mullins v. Thomas Field and Company. We know nothing of an action of Golden Mullins v. Thomas Field and Company except reference thereto in the motions of W. P. Taulbee when he and others tendered and offered to file amended answers and possibly from reference to that action in proof. Apparently it was an action asserting a lien upon or attempting to subject the land in controversy to the payment of the debt, and, if so, should have been consolidated with the other actions but not having that record before us we are unable to determine that question.

It is next argued that the court erred in refusing to permit the filing of the amended answer of W. P. Taulbee and the amended answer and counterclaim of Dora Taulbee and the two daughters. The amended petition in the Powell-Hackney Grocery Company case attacking

the conveyance from W. P. Taulbee and wife to their children was filed on August 15, 1933, and W. P. Taulbee promptly filed answer and other pleadings in the case. Issues were made up, proof taken and four years elapsed before he attempted to set up and assert or claim homestead in the land involved and then by a pleading, vague, indefinite and in which the right, if any, to a homestead, was insufficiently pleaded. Concerning the allegations of Golden Mullins and Mattie Taulbee in their amended answers and cross petition tendered and offered to be filed, it may be said that for reasons presently appearing the judgment of the chancellor setting aside the deed from W. P. Taulbee and wife to his children, including them, should be upheld; and the chancellor on the same facts evidently correctly concluded their claims were not well founded. They likewise delayed for more than four years in asserting their claims although they were before the court and joined their father and mother in other pleadings.

Section 134 of the Civil Code of Practice provides in part:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended, * * * or by inserting other allegations material to the case; or, if the amendment do not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. * * *"

It will be noted that this section invests the court with a discretion in the matter of allowing amendments. These defenses were known to the parties making them from the very outset, but were not offered until the issues had been completed, proof taken and the causes submitted for trial. Manifestly, in the proven circumstances, there was no abuse of discretion on the part of the court in refusing to permit them to be filed. See Callahan v. Dine's Furniture House, 260 Ky. 631, 86 S. W. (2d) 530; Yocum v. Foreman, 77 Ky. 494, 14 Bush 494; Donnelly v. Pepper, 91 Ky. 363, 15 S. W. 879, 13 Ky. Law Rep. 82. But when we come to consider the amended pleading of Dora Taulbee an entirely different situation is presented. She was in no way bound on the notes or accounts sued on in either of the actions and her individual property could not be subjected to the satisfaction thereof unless she had by mortgage or otherwise set it apart for that purpose which she had

not done. The record discloses and it is not denied that she did own in her own right one tract of land and an undivided half interest in another tract which were included in the boundary conveyed by W. P. Taulbee and her to their children. So far as the bank and Grocery company were concerned she had a right to dispose of her own property in any way she saw fit. It is therefore apparent that the court "in furtherance of justice" should have permitted her pleading setting up her ownership of these lands to be filed notwithstanding her delay in asserting her claim thereto and it was an abuse of discretion not to do so. In this connection it may also be said that the judgment is erroneous in so far as it attempted to subject any property of Dora Taulbee to the satisfaction of any of the indebtedness involved.

It is next argued that the court erred in cancelling the deed from W. P. Taulbee and wife to their children in whole or even in part. It is asserted that fraud is never presumed and the burden is on the party asserting it to prove it and the case of Isaac's Adm'r v. Hignite, 265 Ky. 57, 95 S. W. (2d) 1116, is cited. Generally speaking, the rule contended for by counsel is correct but where a confidential relation exists between the parties and a transaction is attended with badges of fraud, the burden shifts to the party attempting to sustain same to rebut the inferences thereby created and to sustain the bona fides of the transaction. Magic City Coal & Feed Company v. Lewis, 164 Ky. 454, 175 S. W. 992, and cases therein cited. Here, the father of the grantee was heavily involved and these actions were pending against him. When the conveyance was made, most of the children were minors but two of the older daughters claim to have paid the lien indebtedness to near relatives of their father which had been standing for years. While at least one of them had a bank account they claim to have paid this indebtedness in cash, and not only so, but the grantees received a one-seventh undivided interest each under the deed. These two sisters paid the entire consideration and according to their evidence took the chance of the younger children paying their pro rata part when they had attained their majority or at some future and indefinite time, without provision being made in the deed for such payment. These and other proven facts and circumstances unnecessary to enumerate afforded sufficient basis for the chancellor's conclusion that the conveyance was made with the

purpose and intent to cheat, hinder and delay W. P. Taulbee's creditors, and that that purpose was known to the grantees; and since there is evidence to support the chancellor's finding or if the evidence to the contrary does nothing more than raise a doubt concerning the correctness of the judgment, it should be affirmed. What we have already said disposes of all other questions argued by counsel for appellants, W. P. Taulbee, et al.

On behalf of appellant, the First National Bank, it is argued that a mortgage given to secure future advances executed in good faith is valid and enforcible.

In 41 C. J., pages 462, 463, it is said:

"A mortgage may be made as well to secure future advances or indebtedness as for a present debt or liability, and if executed in good faith it will be a valid security, in absence of statutory provisions to the contrary. * * * Nor is it essential that the mortgagee should be absolutely bound to make the contemplated advances; between the original parties, at least the mortgage will be valid security although the making of the advances was left to his option or discretion."

And in 19 R. C. L., page 286, it is said:

"It is now well settled that a mortgage to secure future advances, though it does not disclose such purpose on its face, is valid between the parties or against any subsequent incumbrances prejudiced thereby."

To the same effect see Louisville Banking Company v. Leonard, 90 Ky. 106, 13 S. W. 521, 11 Ky. Law Rep. 917; Bondurant v. Tally's Trustee, 191 Ky. 202, 229 S. W. 377, 378. In the latter case it is said:

"It cannot be questioned that a mortgage given in good faith for a specific sum, as security for future advancements, is valid to the extent of the debt specified, as against the mortgagor's general creditors." A number of cases are cited in support thereof. See also Kentucky Lumber & Mill Work Company v. Kentucky Title Savings & Trust Company, 184 Ky. 244, 211 S. W. 765, 5 A. L. R. 391, and cases therein cited.

Here as will be seen from the quoted provision of

the mortgage it not only secured the indebtedness therein specified but any other indebtedness of the mortgagors to the mortgagee during the life of the mortgage to the extent of $2,000; and to that extent as clearly indicated by the authorities cited, it was valid and binding upon the mortgagors. The conclusion is therefore inescapable that the chancellor erred in holding 'that the indebtedness of Perry Taulbee to the First National Bank of Jackson which was the subject of the suit of the bank against Seldon Taulbee and others was not covered by the mortgage.

Wherefore the judgment is affirmed in part and reversed in part for proceedings and judgment in conformity with this opinion.