FIRST COMMONWEALTH BANK OF PRESTONSBURG, Appellant,

v.

Shelia WEST; Thurman West; Thurman West Trucking Company; United States of America Department of the Treasury, Internal Revenue Service; and Floyd County, Kentucky, Appellees.

No. 1998–CA–001203–MR.

Court of Appeals of Kentucky.

Sept. 8, 2000.

Discretionary Review Denied
Aug. 15, 2001.

Richard E. Fitzpatrick, Martin L. Osborne, Prestonsburg, KY, for Appellant.

Shelia West, Gregory A. Isaac, Prestonsburg, KY, for Appellee.

Before: GUIDUGLI, JOHNSON and KNOPF, Judges.

## OPINION

GUIDUGLI, Judge.

First Commonwealth Bank of Prestonsburg, Inc. (FCB), appeals from an order of the Floyd Circuit Court which denied its motion for summary judgment against Shelia West (Shelia).[1] We reverse and remand this matter with instructions to enter summary judgment in favor of FCB.

This case presents an issue of first impression—namely whether a co-mortgagor can obligate another co-mortgagor's interest in real property covered by a mortgage containing a future advance clause by incurring additional indebtedness with the mortgagee without the knowledge or consent of the other co-mortgagor. The facts in this case are fairly straightforward and, for the most part, undisputed.

Shelia and Thurman West (Thurman) were married in 1978. Throughout their marriage, Thurman operated a trucking company. During their marriage, Shelia and Thurman purchased a house in Ivel, Kentucky (the residential property) and a piece of property from which the trucking business was operated (the commercial property). It appears from the record that FCB financed the purchase of the commercial property.

On April 8, 1991, Shelia and Thurman executed a promissory note in favor of FCB in the amount of $75,010.50. The note indicated on its face that the purpose of the loan was "ref & business exp." The note was secured by a mortgage executed on the same date covering both the residential and commercial property as well as a third tract of land. The mortgage contained the following future advance clause:

> It is understood and agreed that this mortgage is given not only to secure the above indebtedness, and all extensions, modifications and renewals of same, but also any and all financial obligations, however arising, whether direct or indirect, and any extensions, modifications and renewals thereof which the Mortgagor or the Borrower or any of them, may now owe or hereafter incur to the Lender, or its successors in title, so long as this mortgage shall remain unreleased of record, even though the origi-

---

1. We are mindful of the fact that a denial of a motion for summary judgment is generally not appealable due to its interlocutory nature. CR 56.03. However, an exception to this rule exists where "(1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom." *Transportation Cabinet, Bureau of Highways, Commonwealth of Kentucky v. Leneave*, Ky.App., 751 S.W.2d 36, 37 (1988). As this case satisfies the requirements for the exception, we will review the trial court's denial of summary judgment.

nal indebtedness referred to herein shall have been reduced or fully paid, but the maximum amount, exclusive of interest, attorney fees and costs, secured hereunder shall not at any one time exceed $115,000.00.

On December 21, 1992, Shelia and Thurman executed a second promissory note in favor of FCB in the amount of $74,454.62. The note indicated on its face that the purpose of the loan was "refinance balloon balance." According to an affidavit submitted by Greg Wilson, Senior Vice–President of FCB, the purpose of this loan was to refinance a five year note executed in 1987 to purchase the commercial property. The note was secured by a mortgage executed on the same date covering only the commercial property. This mortgage contained a future advance clause identical to the one contained in the first mortgage, the only difference being that the maximum amount secured was not to exceed $122,000.

Aside from the previously-described notes and mortgages, Thurman had some financial dealings with FCB of which Shelia was unaware. On December 23, 1991, Thurman executed a note in favor of FCB in the amount of $25,021 which was secured by a 1987 Mack tractor and a 1987 R and S trailer. Thurman signed the note as "Thurman West d/b/a Thurman West Trucking Co." This note was later modified under a loan modification agreement dated March 31, 1995, between FCB and Thurman West d/b/a Thurman West Trucking Company. It is undisputed that Shelia did not sign this note.

On June 8, 1994, Thurman executed another note in favor of FCB, this one in the amount of $50,000. Once again, Thurman signed the note as "Thurman West d/b/a Thurman West Trucking Co." No security was listed on the face of the note. On the

loan application, Thurman indicated that the purpose of the loan was "business purposes—ins. & tires." The same purpose was listed on a loan memorandum form. The loan application also provided that the loan was unsecured. This loan was also modified by a loan modification agreement dated March 31, 1995, between FCB and Thurman West d/b/a Thurman West Trucking Co. Once again, it is undisputed that Shelia did not sign this note.

Shelia and Thurman separated in 1995 and eventually divorced. At some point in time either before or after their separation, all four notes fell into default and on September 10, 1996, FCB instituted foreclosure proceedings and asked that the mortgaged property be sold to satisfy the debt on all four notes. In her answer, Shelia argued that the future advance clauses contained in the 1991 and 1992 mortgages "were not applicable to her undivided interest in the real property described therein since she did not personally obligate herself upon any subsequent debts or other obligations to [FCB]." Thurman failed to answer FCB's complaint.[2]

FCB filed its first motion for summary judgment and order of sale on November 11, 1996. In response to Shelia's answer, FCB argued that future advance clauses such as those contained in the two mortgages were valid in Kentucky. On the same day, FCB filed a combined motion for default judgment/summary judgment and order of sale in which it argued that some of the defendants had not answered and that the defendants which had answered had raised no genuine issue of material fact. In her response, Shelia argued that future advance clauses cannot be used to subject mortgaged property to subsequent debt incurred by a joint mortgagor unless the other mortgagor was

---

**2.** There were other parties listed as defendants to FCB's complaint, but as they are not involved in the current dispute we need not make mention of them.

aware of the subsequent debt and executed the additional documents. Shelia indicated that other jurisdictions had held that a single co-mortgagor could bind both mortgages to subsequent debt due to the operation of a future advance clause, but argued that in those cases there was a "clear and explicit intent shown within the ... clause that it was to cover all subsequent indebtedness." Shelia further argued that even if the trial court adopted this position, summary judgment would still be improper because there would be a factual issue as to whether the future advance clauses "contained clear and explicit language that all future obligations would be covered." FCB responded to Shelia's argument by noting that the question of whether the language of the future advance clauses was ambiguous was a question of law for the trial court to decide.

On January 21, 1997, the trial court entered the first of two orders regarding FCB's motions for summary judgment. In this order, the trial court denied FCB's motion for summary judgment, apparently as to Shelia alone, finding that factual issues existed and needed to be addressed. In the order, the trial court also added *sua sponte* that "an issue has been raised as to whether Shelia West executed the original mortgage notes as an accommodation party for the business ... and that as such the discharge provisions of KRS 355.3–605(4) may be relevant to this action[.]"

In a second order entered February 25, 1997, the trial court entered a default judgment/partial summary judgment and provisional order of sale in favor of FCB. However, the trial court noted:

> The only contested issue in this litigation is whether or not the undivided ownership interest of Defendant Shelia West, in the subject real property, is subject to two (2) notes made individually by the Defendant Thurman West by reason of a [future advance] clause as contained in

the mortgages herein sued upon. That issue is not herein addressed and is reserved for a later determination.

The order also provided that the property was to be sold "only upon supplemental order or amended judgment of this Court directing such sale."

FCB filed its second motion for summary judgment on January 12, 1998. FCB argued that the language of the future advance clauses was clear and unambiguous and that the clauses should be enforced as written. In regard to the issue of whether Shelia was an accommodation party, FCB argued that because she did not sign the two notes made by Thurman she could not be an accommodation party as defined in the Uniform Commercial Code, and that even if she was she waived her status as such when she executed the mortgages containing the future advance clauses.

In her reply, Shelia addressed the issues concerning accommodation status and enforceability of the future advance clauses. Additionally, Shelia argued that the future advance clauses could not attach to Thurman's 1991 note because it was secured by other consideration, namely the 1987 tractor and trailer.

In an order entered March 3, 1998, the trial court denied FCB's motion for summary judgment. The trial court subsequently amended its order on April 17, 1998, and stated as follows:

> [I]t appearing to the Court that the sole issue presented was whether the dragnet clause in the two (2) mortgages signed by Shelia West, were, as a matter of law so clear and unambiguous that it should have been clear to Shelia West that her co-mortgagor (her now ex-husband Thurman West) can subsequently and unilaterally obligate her undivided interest in the mortgaged real property by executing additional promissory notes with the Plaintiff and without the

knowledge or signature of Shelia West, and it appearing to the Court that Shelia West denies she had any knowledge of the subsequent promissory notes and all parties have agreed that Shelia West did not execute the subsequent promissory notes, and it further appearing to the Court that it is significant that the first promissory note subsequently executed solely by Thurman West, dated December 23, 1991, did not refer back to the mortgage and at one time had other collateral listed to secure same although such collateral was released on September 1, 1992 and prior to the instant litigation, and that the Plaintiff, First Commonwealth Bank, did subsequently modify both promissory notes signed solely by Thurman West without obtaining the signature of Shelia West, it does thereby appear to the Court that after reviewing both mortgages and the subsequent promissory notes executed solely by Thurman West, that the dragnet clauses contained in the mortgages do not, as a matter of law, contain language that is so clear and unambiguous that it would put a reasonable person on notice that their co-mortgagor could subsequently and unilaterally execute a promissory note which would also bind the first co-mortgagor's undivided interest even if said person was not aware of and did not execute the subsequent promissory notes[.]

This appeal followed.

## I. DOES THE FUTURE ADVANCE CLAUSE CONTAINED IN THE TWO MORTGAGES EXECUTED BY SHELIA AND THURMAN ALLOW THURMAN TO OBLIGATE SHELIA'S UNDIVIDED INTEREST IN THE MORTGAGED PROPERTY WITHOUT HER PERMISSION?

█ We would note at the outset that future advance clauses such as the ones contained in the mortgages at issue are valid in Kentucky. "[A] mortgage may be drafted, if given in good faith, so as to secure future extensions and renewals as well as a present debt." *Bank of Maysville v. Brock,* Ky., 375 S.W.2d 814, 816 (1964). *See also Trio Realty Company, Inc. v. Queenan,* Ky., 360 S.W.2d 747 (1962); *Taulbee v. First Nat. Bank of Jackson,* Ky., 279 Ky. 153, 130 S.W.2d 48 (1939). "It is sufficient if the mortgage clearly shows it is to stand as security for both an original loan and for such additional indebtedness as may arise from future dealings between the parties." *Brock,* 375 S.W.2d at 816.

The validity of future advance clauses was taken one step further in *Martuscelli v. Planters Bank & Trust Company,* Ky. App., 705 S.W.2d 938 (1986). In that case, Peter and Mary Matruscelli executed a mortgage which provided:

> Any additional advancement or loan made hereunder by Second Party to any person who is a First Party [mortgagor] hereto shall bind all other persons who are First Parties hereto just as if made to each and all of them, and all First Parties shall be jointly and severally liable to repay any such obligations shall [sic] be fully secured by this mortgage.

Peter subsequently executed a second note, and when he defaulted the trial court entered summary judgment against Mary as Peter's guarantor on the second note. This Court affirmed the trial court's decision. *Martuscelli,* 705 S.W.2d at 939. However, it is not known in *Martuscelli* whether Peter executed the second note without Mary's consent, which is the issue facing us now. As we noted earlier, this case presents an issue of first impression in Kentucky, and "[n]o lamp of precedent lights our way." *First v. Byrne,* 238 Iowa

712, 28 N.W.2d 509, 511 (1947). However, other states have addressed this issue, and we turn to them for guidance.

In *Walters v. Merchants & Manufacturers Bank of Ellisville,* 218 Miss. 777, 67 So.2d 714 (1953), the Mississippi Supreme Court stated:

Where the [future advance] clause is broad enough to cover subsequent debts of one of the joint mortgagors, the ... clause is generally construed so as to extend the security of the mortgage executed by joint mortgagors to the individual indebtedness of one of them afterward created.

. . . .

The ... clause here involved expressly covers 'any and all debts that the said grantors or either of them may incur with or owe to the said beneficiary, . . . .' The parties clearly agreed that it would secure debts incurred by both of them and either of them,. No fraud is shown, and under the contract and the decisions we must enforce the provision as written.

*Walters,* 67 So.2d at 717–718.

In *Newton County Bank v. Jones,* 299 So.2d 215 (Miss.1974), which is factually similar to ours, the Mississippi Supreme Court explained its rationale even further. In this case, Mr. and Mrs. Jones executed a deed of trust which provided security as to not only the original note, but also "all loans and advances which [the Bank] has made or may hereafter make to the Grantor, or any one of them." Sometime after the execution of the original note and mortgage, Mr. Jones, without Mrs. Jones's knowledge or consent, borrowed more money from the Bank. This loan was secured by a herd of cattle. When Mr. Jones defaulted on the note and the cows were nowhere to be found, the Bank sought to foreclose on the deed of trust. In holding that the Bank could use the future advance clause to foreclose on the property even though Mrs. Jones had no knowledge of Mr. Jones's actions, the Mississippi Supreme Court stated:

The deed of trust before us explicitly states that its purpose was 'to secure all loans and advances which the [Bank] has made or may hereafter make to the grantor or any one of them.' Whoever drafted it was obviously relying upon and tracking what the court said in ... *Walters* [.] *The quoted language is sufficiently clear and in such unambiguous and unmistakable terms as to contemplate and secure additional 'loans' obtained from the bank by Mr. Jones alone.* Although Mr. Jones may not have acted prudently or in the best interest of himself or his wife when he incurred the additional indebtedness, the compelling legal aspect is that his action was precisely what she bargained for and contractually authorized him to do.

. . . .

When inserted in a deed of trust, such a clause operates as a convenience and an accommodation to borrowing spouses. It makes available additional funds without both having to execute additional security documents, thereby saving time, travel, loan closing costs, costs of extra legal services, recording fees, et cetera.

*Jones,* 299 So.2d at 218 (emphasis added). *See also Holland v. Bank of Lucedale,* 204 So.2d 875 (Miss.1967).

It is important to note in *Jones* that the Mississippi Supreme Court focused on the fact that the clause referred to future loans made by "the grantor or any one of them" and held that the unmistakable and unambiguous effect of such language was to both "contemplate and secure" loans obtained by one mortgagor acting alone. An examination of other states which have

addressed this issue shows that in order for future advance clauses to secure additional loans made to a co-mortgagor without the knowledge or consent of the other co-mortgagor, "the clause should recite that it covers any other indebtedness of the mortgagors 'or either or any of them,' or contain similar language." Milton Roberts, Annotation, *Debts Included in Provision of Mortgage Purporting to Cover All Future and Existing Debts (Dragnet Clause)—Modern Status*, 3 A.L.R. 4th 690, 698 (1981). In fact, the annotation further provides that "[i]f it is desired that a mortgage shall secure all indebtedness of the mortgagors to the mortgagee in addition to the specific debt secured by the mortgage, care must be taken in drafting a [future advance] clause in the mortgage to make that intention clear and unmistakable." *Id.* Other jurisdictions have upheld the enforceability of similarly worded clauses. *See Padgett v. Haston*, 279 Ark. 367, 651 S.W.2d 460 (1983)(upholding future advance clause which secured future loans made to "any person" designated "mortgagor"); *M.H. Wright v. Lincoln County Bank*, 62 Tenn.App. 560, 465 S.W.2d 877 (1970)(finding that language of future advance clause purporting to bind "the undersigned, or either of them" to be unambiguous and enforceable); *Loudermilk v. Citizens Bank of Mooresville*, 505 N.E.2d 107 (Ind.Ct.App.1987)(noting that customary method of including future several debt in mortgage is to use phrase such as "the indebtedness of the mortgagors or either of them"). *But see Citizens Bank & Trust Company v. Gibson*, 490 N.E.2d 728 (Ind.1986)(denying enforcement of clause referencing "all indebtedness of mortgagors and borrowers to Mortgagee whether now existing or hereafter incurred" against wife whose husband incurred additional loans with lender); *Bank of Woodson v. Hibbitts*, 626 S.W.2d 133 (Tex.App.1981)(holding that fu-

ture advance clause referring to indebtedness "now owing or in the future may be owing by mortgagors" only provides security for debt incurred by all mortgagors, "not either or any of them"); *Farmers Trust and Savings Bank v. Manning*, 311 N.W.2d 285 (Iowa 1981)(holding that future advance clause which referenced "any and all future and additional advances made to the Mortgagors" to be unenforceable as to co-mortgagor alone); *Holiday Inns, Inc. v. Susher–Schaefer Investment Co.*, 77 Mich.App. 658, 259 N.W.2d 179 (1977)(holding future advance clause securing "indebtedness and liabilities ... now or hereafter owing ... from the Mortgagor" to be unenforceable as to subsequent loans to co-mortgagor acting alone).

Turning to the facts at hand, the clauses contained in the mortgages at issue provide security for "any and all financial obligations ... and any extensions, modifications and renewals therefor which the Mortgagor or Borrower *or any of them*, may now owe or hereafter incur." We note at the outset that a mortgage is essentially a contract between the borrower and lender, and as such "[t]he rules of contract interpretation apply to our review of the language of a mortgage." *Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358, 362 (1999). *See also Connecticut Housing Finance Authority v. John Fitch Court Associates Limited Partnership*, 49 Conn.App. 142, 713 A.2d 900, 904 (1998); *Ogan v. Ogan*, 122 Ohio App.3d 580, 702 N.E.2d 472, 474 (1997). The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court. *Hibbitts v. Cumberland Valley National Bank & Trust Company*, Ky.App. 977 S.W.2d 252, 254 (1998). As the trial court's decision that the mortgage in this case was ambiguous is a matter of law, our standard of

review is *de novo.* *Calomiris,* 727 A.2d at 362.

Based on our review of case law from other jurisdictions, in particularly the Mississippi Supreme Court's decision in *Jones,* we find that the trial court erred in holding that the future advance clauses are ambiguous. The clauses clearly provide that it subjects "the Mortgagor or the Borrower *or any of them*" to liability for any future debt incurred. We believe that this language is sufficient to subject Shelia's interest in the mortgaged property to liability for Thurman's notes even though she had no knowledge of his actions. Although this result is harsh, we are mindful that we are not permitted to create an ambiguity where none exists even if doing so would result in a more palatable outcome. *Friction Materials Company, Inc. v. Stinson,* Ky.App., 833 S.W.2d 388, 391 (1992).

> When a contract is plain, unambiguous and fair, not vitiated by fraud nor mistake in its execution, the courts are not authorized to make for the parties to it a different one, or to construe it contrary to its express terms.

*Johnson v. Edwards,* Ky., 230 Ky. 485, 20 S.W.2d 76, 77 (1929), *citing Stevenson v. Phoenix Insurance Co.,* Ky., 83 Ky. 7 (1884). Furthermore, where a contract is free from ambiguity, "it needs no construction and will be performed or enforced in accordance with its express terms." *Ex parte Walker's Ex'r,* Ky., 253 Ky. 111, 68 S.W.2d 745, 747 (1933). We believe the following language from *Jones* to be applicable:

> Both spouses, being legally competent, had the right to jointly enter into the [mortgage] which included the [future advance] clause. [Shelia] should not be allowed to escape the consequences she risked when she became signatory to such a contract.

. . . .

> Here [Shelia] reposed in her husband trust and confidence which resulted in her willingness to make the bargain evidenced by the [mortgage]. In this manner she contractually allowed [Thurman] to use her credit (secured by her property). Having bargained and contracted as she did, it would be unconscionable for us to hold that her [interest in the land] does not secure the funds loaned by the bank in reliance on the contract. No charge or suggestion was made that the bank was the aggressor or that [Shelia] fell victim to a loan shark who defrauded or overreached her in any manner. She and her husband requested the original loan which was made on the expressed provision that it would be secured by the [mortgage]. They covenanted with the bank that either of them could individually enlarge the deed of trust lien as was done.

*Jones,* 299 So.2d at 218–219.

## II. DOES THE FACT THAT THURMAN'S DECEMBER 1991 NOTE WAS SECURED BY OTHER COLLATERAL REQUIRE A DIFFERENT OUTCOME?

As previously indicated, the note Thurman executed in December 1991 was secured by a tractor and trailer. Shelia contends that because that note was secured by security other than that pledged in the mortgages executed by her, the future advance clauses do not attach. We disagree.

Shelia is correct that "[i]ndependent loans secured by different security . . . have been held not covered by the mortgage . . . under the construction placed on the [future advance] clause in some mortgages." 54A Am.Jur.2d *Mortgages* Sec. 73 (1996). *See also Tennis Coal Co. v. Asher & Hensley,* Ky., 143 Ky. 223, 136 S.W. 197,

198 (1911). However, we believe there are two reasons why *Asher* does not apply in this case.

First, *Asher* involved three notes: (1) a note executed in June 1899 secured by timber standing on a tract of land; (2) a note executed in September 1899 secured by a mortgage on two tracts of land; and (3) a note executed in 1903. The mortgage contained a future advance clause providing that it secured the September note and "any other indebtedness second parties ... may incur[.]" Thus, while this clause would cover the 1903 note, it would *not* have covered the June 1899 note as it was a true future advance clause as opposed to a dragnet clause.

Secondly, as FCB points out, the collateral securing Thurman's December 1991 note had been released on September 1, 1992. We believe that the release of the collateral securing the December 1991 note places it back into the scope of the future advance clause. Had the collateral not been released, we may have been persuaded otherwise.

## III. WAS SHELIA AN INDORSER OR ACCOMMODATION PARTY SO THAT FCB'S AGREEMENTS TO MODIFY THURMAN'S NOTES DISCHARGED HER OBLIGATION THEREUNDER?[3]

█ Shelia maintains that when Thurman's notes were modified under the terms of the two modification agreements, her liability was discharged pursuant to KRS 355.3–605(4). We disagree. KRS 355.3–605(4) provides in pertinent part:

3. FCB argues in its reply brief that this issue was moot because the trial court's default judgment/partial summary judgment and provisional order of sale indicated that the sole issue remaining to be decided was the effect of the future advance clause. We disagree.

If a person entitled to enforce an instrument agrees, with or without consideration, to a material modification of the obligation of a party other than an extension of the due date, the modification discharges the obligation of an indorser or accommodation party having a right of recourse against the person whose obligation is modified to the extent the modification causes loss to the indorser or accommodation party with respect to the right of recourse.

Pursuant to KRS 355.3–419:

If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") *signs* the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is *signed* by the accommodation party "for accommodation."

KRS 355.3–419(1)(emphasis added). As Shelia did not sign either of Thurman's notes, she cannot be considered an accommodation party.

The same is true to the extent that Shelia claims she was an indorser of Thurman's notes. Under KRS 355.3–204, an "indorser" is one who makes an indorsement. "Indorsement" is defined as:

[A] *signature* ... that alone or accompanied by other words is *made on an instrument* for the purpose of:

(a) Negotiating the instrument;

(b) Restricting payment of the instrument; or

(c) Incurring indorser's liability on the instrument[.]

The trial court clearly stated in its order that one of the considerations it looked at in reaching its decision was that FCB " did subsequently modify both promissory notes signed solely by Thurman West without obtaining the signature of Shelia West[.]"

KRS 355.3–204(1)(emphasis added). Once again, as Shelia did not sign Thurman's notes, she was not an indorser.

Furthermore, Shelia's reliance on Article 3 of the Uniform Commercial Code (KRS 355.3–101 *et seq.*), particularly KRS 355.3–414(4), is misplaced. Article 3 deals exclusively with negotiable instruments, which are defined as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges[.]" KRS 355.3–104(1). A mortgage, while it may provide security for a negotiable instrument, is not a negotiable instrument.

Having considered the parties' arguments on appeal, the order of the Floyd Circuit Court is reversed and this matter is remanded to the trial court with instructions to enter summary judgment in favor of FCB in accordance with the dictates of this opinion.

ALL CONCUR.