DIXON, JUDGE:
Bloomsz, LLC, appeals the judgment of the Boone Circuit Court in favor of Appellant's former sales representative, Joseph Van Bourgondien. Finding no error, we affirm.
Bloomsz and its affiliate, DeVroomen Bulb Company, are engaged in the business of selling horticultural products to retail outlets and garden centers.[1] Prior to 2012, Van Bourgondien sold horticultural products for his family-owned business, K. Van Bourgondien & Sons, until the company was sold in bankruptcy. In February 2012, Van Bourgondien entered into an oral agreement with the owner of Bloomsz and DeVroomen, Hans Philippo, to sell the companies' garden products to various retailers. On February 17, 2012, Van Bourgondien sent an e-mail to Philippo, which stated:
Based on starting on a draw verses [sic] commissions, I would need a monthly draw of 11,250. One other thing we did not discuss was you covering my traveling expenses?
I attached a commission structure that I had given Peter with commission at gross margin levels.
Please let me know if you are in agreement with this.
Philippo later replied, "[M]y answer is yes, I can work with this[.]" Shortly thereafter, the staff accountant for the companies, Maria Anderson, began wiring $11,250.00 to Van Bourgondien's bank account each month. Van Bourgondien resigned from his position at Bloomsz and DeVroomen in February 2013.
Bloomsz filed a complaint against Van Bourgondien for breach of contract. Bloomsz alleged Van Bourgondien was personally liable for repayment of monthly advances that exceeded his commissions in the amount of $67,082.92. Van Bourgondien generally denied the allegations.
On July 7, 2016, the matter came before the Boone Circuit Court for a bench trial. The court heard testimony from Van Bourgondien and from Bloomsz's accountant, Anderson. According to Van Bourgondien's testimony, he agreed to work as an independent contractor salesman for Bloomsz and DeVroomen. Van Bourgondien explained that he, along with his boss at Bloomsz, Peter Zonneveld, worked with major chain retailers throughout the country *382 to market Bloomsz's products. Van Bourgondien also worked with Roland Van den Bergh, his supervisor at DeVroomen, to showcase products at trade shows and regional retailers in the Midwest and Northeast. Van Bourgondien testified he had an oral agreement with Philippo to sell products on a commission basis. The e-mail from Philippo approving Van Bourgondien's $11,250.00 monthly advance on his commissions was introduced into evidence. Van Bourgondien maintained he never discussed with anyone that he would be personally liable for repayment in the event his commissions were less than the amount he was advanced each month. He acknowledged he understood the companies would, at some point, reconcile the advances paid and commissions earned; however, he hoped his commissions would exceed his advances.
The circuit court entered findings of fact, conclusions of law, and a judgment in favor of Van Bourgondien. The court concluded there was no agreement between the parties that Van Bourgondien would be personally liable for any advances that exceeded his commissions. This appeal followed.
Bloomsz contends the court erred by disregarding Van Bourgondien's status as an independent contractor, along with his testimony indicating he understood the companies would eventually reconcile the advances paid and commissions earned.
The Boone Circuit Court, ruling in favor of Van Bourgondien, relied on Hibbs-Kiefer Hat Co. v. Schneiderhan , 236 Ky. 470, 33 S.W.2d 304 (1930), which involved an employer's contract with its traveling salesman to sell products on commission. The parties agreed the employer would advance weekly travel expenses to the salesman's drawing account and that the advances would be deducted from the commissions earned. Id. The salesman later resigned, having been paid more in advances than he earned in commissions. Id. The employer sued for breach of contract to recover the difference between the advances paid and commissions earned. Id. The Court concluded the parties' agreement precluded the employer from recovering the funds from its former employee. Id. at 305. The Court explained its reasoning, in relevant part:
No contract can be implied under which personal indebtedness will be created, for the express contract alleged in this petition is that those sums were to be deducted from the commissions which the employee might earn. There is no reference to any personal liability. The sole source of reimbursement was the commissions. It was the belief of the parties that these would be sufficient, not only to reimburse the companies, but to compensate the salesman in addition. To that extent the enterprise was in the nature of a joint speculative adventure from which both parties expected to profit.
Id.
In Agnew v. Cameron , 247 Cal.App.2d 619, 55 Cal.Rptr. 733, 735-36 (Ct. App. 1967), California's Fourth District Court of Appeal cited numerous cases, including Hibbs-Kiefer , when it adopted the majority rule that "the employer cannot recover excess advances from the employee in the absence of an express or implied agreement or promise to repay any excess of advances made over commissions earned." The Agnew court elaborated on the purpose of the majority rule:
The rationale for the existence of the majority rule is that the employee's undertaking is in the nature of a joint enterprise with the employer, the main object of which is the furtherance of the employer's business, and it is not to be assumed that the employee, in furnishing *383 his time and ability, likewise assumes all the risk. When advances are made in regular amounts in consideration of continued activity by the employee, because of the regularity in payment and the requirement the employee give his full time and energies to the employment relationship, the presumption arises that the advances constitute salary or wages and thus are recoverable only from commissions.
Id. at 736.
In the case at bar, Bloomsz contends cases such as Hibbs-Kiefer and Agnew are inapplicable because Van Bourgondien worked as an independent contractor rather than an "employee." Notably, Bloomsz fails to cite any legal authority to support its argument. We, however, find Amherst Sportswear Co., Inc. v. McManus , 876 F.2d 1045 (1st Cir. 1989), persuasive on this issue. There, the First Circuit rejected the argument that a worker labeled as an "independent contractor" was automatically excluded from the majority rule's presumption "the agent is not personally liable to repay advances absent a showing of a contrary intention[.]" Id. at 1048. The Court explained, "We do not agree that the presumption turns on a narrow, mechanical determination of whether, within agency parlance, the agent was an 'employee' rather than an 'independent contractor.' " Id. at 1049. Rather, in analyzing the duties performed by an "independent contractor," the Court focused on whether the individual dedicated his time and ability to furthering the employer's business interests, noting the majority rule generally applied where the parties' relationship was "substantially one of employment." Id.
Van Bourgondien testified he worked alongside his bosses at Bloomsz and DeVroomen making sales calls to retailers across the country and attending industry trade shows to market the companies' products. Van Bourgondien explained he recruited salespeople and successfully lobbied major garden industry buying groups (including Ace Hardware and True Value) to accept DeVroomen as a registered vendor for members of the buying groups. Further, in e-mails introduced at trial, representatives of Bloomsz and DeVroomen acknowledged Van Bourgondien's accomplishments and advised him they were "investing in DeVroomen's future via you." Here, ample evidence in the record supports the conclusion Van Bourgondien dedicated his time and ability to furthering the business interests of Bloomsz and DeVroomen. Despite being labeled as an "independent contractor," it is apparent Van Bourgondien's relationship with the companies was substantially one of employment. See id.
Having concluded an employer-employee relationship existed, we turn to the agreement regarding Van Bourgondien's compensation. "The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." First Commonwealth Bank of Prestonsburg v. West , 55 S.W.3d 829, 835 (Ky. App. 2000). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Industries, Inc. , 103 S.W.3d 99, 106 (Ky. 2003). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Cantrell Supply, Inc. v. Liberty Mutual Insurance Co. , 94 S.W.3d 381, 385 (Ky. App. 2002).
Here, Van Bourgondien's e-mail to Philippo stated:
*384 Based on starting on a draw verses [sic] commissions, I would need a monthly draw of 11,250. One other thing we did not discuss was you covering my traveling expenses?
I attached a commission structure that I had given Peter with commission at gross margin levels.
Please let me know if you are in agreement with this.
Philippo responded, "[M]y answer is yes, I can work with this[.]"
There was no ambiguity in the terms of the agreement. The plain language reveals the parties agreed Van Bourgondien would receive a monthly draw of $11,250.00 against his commissions. The agreement made no reference to any personal liability on the part of Van Bourgondien. After careful consideration, we agree with the trial court that the rule expressed in Hibbs-Kiefer applies here:
No contract can be implied under which personal indebtedness will be created, for the express contract alleged in this petition is that those sums were to be deducted from the commissions which the employee might earn.
Hibbs-Kiefer Hat Co. , 33 S.W.2d at 305. We conclude the express terms of the parties' agreement controlled, thus Van Bourgondien was not personally liable for repayment of monthly advances that exceeded his commissions. The circuit court properly concluded no breach of contract occurred and entered judgment in favor of Van Bourgondien.
For the reasons stated herein, the judgment of the Boone Circuit Court is affirmed.
ALL CONCUR.

Prior to the filing of the complaint, DeVroomen Bulb assigned its interest in the claims against Van Bourgondien to Bloomsz.