RENDERED:  DECEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1815-MR

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT                                    APPELLANT


v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JOHN E. REYNOLDS, JUDGE
ACTION NO. 18-CI-03551


JOHN LOWE AND FRATERNAL                                          \
ORDER OF POLICE TOWN BRANCH
LODGE #83                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE:  Lexington-Fayette Urban County Government (LFUCG)

appeals the denial of its motion to dismiss and the summary judgment of the

Fayette Circuit Court entered in favor of John Lowe and Fraternal Order of Police

Town Branch Lodge #83 (FOP) on November 21, 2019.  The circuit court

concluded that LFUCG breached the terms of the parties' collective bargaining

agreement when it placed Lowe on leave without pay following his arrest in June 2014 and later dismissed him from service. After our review, we affirm.

The facts are undisputed. Lowe was hired as a community corrections officer by LFUCG in November 2002. He was promoted to sergeant in December 2012. He worked at the Fayette County Detention Center processing inmates. He was a member of FOP. LFUCG and FOP executed collective bargaining agreements. One of the agreements was effective between February 2012 and February 2016; the other between November 2015 and November 2019.

On June 5, 2014, Lowe was arrested based on allegations that on three occasions, he sodomized and sexually abused his seven-year-old stepdaughter. He was booked into the Fayette County Detention Center.

On this date, Major James Kammer, Bureau Manager, Division of Community Corrections, advised Lowe in writing that he was recommending Lowe's dismissal based on the acts of moral turpitude and the pending criminal charges against him. In a memorandum acknowledged by Lowe, Kammer notified Lowe that he was also being placed immediately on leave without pay pending termination proceedings. Lowe's sworn authority was withdrawn. Pursuant to the terms of the parties' collective bargaining agreement and within 24 hours from the date of his booking, he was advised that he could request a meeting with the

director of Community Corrections for the purpose of presenting "your side of the matter along with any materials you wish to provide."

On June 6, 2014, Lowe's criminal defense attorney corresponded with Kammer. Defense counsel indicated that he also represented Lowe with respect to his employment status with LFUCG. Counsel informed Kammer that Lowe denied the criminal allegations made against him and that he objected to any change in his employment status. Lowe specifically objected to being placed on leave without pay and the recommendation that he be dismissed from service. Finally, counsel advised that Lowe "would be glad to appear for a hearing or a meeting . . . ."

LFUCG's counsel responded to Lowe's counsel by letter dated June 10, 2014. LFUCG reiterated that Lowe's law enforcement authority had been withdrawn pursuant to the terms of the parties' collective bargaining agreement. LFUCG indicated that as a consequence of the withdrawal of his sworn authority, Lowe could not report for duty and that he would remain on administrative leave without pay until the criminal charges were resolved. LFUCG reported that an internal affairs investigation had been initiated but that it would be held in abeyance until the criminal matter had been resolved unless other information came to light. Lowe was cautioned that his conviction would result in dismissal. Finally, LFUCG advised that "[t]he current status of this matter does not require

-3-

that Sergeant Lowe meet with Director Ballard (or his designee), but Director Ballard is willing to have such a meeting if Sergeant Lowe so desires."

On November 23, 2015, Lowe was indicted for two counts of sodomy, first degree (Class A felonies) and one count of sexual abuse, first degree (a Class C felony). Nearly two years later, on October 18, 2017, Lowe entered a plea pursuant to the standard announced by the U.S. Supreme Court in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) to three counts of unlawful transaction with a minor, third degree (Class A misdemeanors). Final judgment convicting Lowe of the amended charges was entered, and Lowe was sentenced by the Fayette Circuit Court to time served.

On October 26, 2017, a memorandum -- marked as though it would be circulated to Lowe -- was prepared by Steven Haney, Director, Division of Community Corrections. The memorandum indicated that based upon his guilty plea to the charges against him, Lowe was dismissed from his employment as of that date. Lowe was instructed to return his facility equipment to the training department. This memorandum was not initially transmitted to Lowe or to his lawyer, nor was it transmitted to FOP. Haney also executed a personnel action request, effective October 26, 2017, which officially terminated Lowe for misconduct under Section 8(c) of the Uniform Disciplinary Code. Lowe was not informed of this official personnel action.

Unaware of either the memorandum or the personnel action, Lowe's new attorney corresponded with Director Haney on November 2, 2017. Counsel recounted Lowe's suspension pending resolution of the criminal matter. He advised that the criminal matter had been resolved and that Lowe intended to return to his duties on Monday, November 6, 2017. Counsel also requested backpay that had been accruing since Lowe's suspension on June 5, 2014.

On November 4, 2017, counsel for Lowe corresponded again with Haney. Counsel related that he had learned of Lowe's termination during an unrelated grievance hearing just the day before. He demanded Lowe's immediate reinstatement. Counsel indicated that in his memorandum of June 5, 2014, Major Kammer had "improperly represented the disciplinary process and the employment status of officers having pending criminal charges under the 2012 Collective Bargaining Agreement and LFUCG Corrections polices." Counsel indicated that there was no provision for administrative leave without pay under the terms of the parties' agreement and that LFUCG had failed to deliver to Lowe a disciplinary action form providing notice of the proposed discipline and an opportunity for a hearing *before* the leave was imposed.

On November 6, 2017, LFUCG responded. It informed counsel that Lowe's failure to file a grievance pursuant to the terms of the parties' collective bargaining agreement meant that Lowe had accepted the initial employment action,

*i.e.*, on leave without pay. Moreover, since Lowe's conviction involved an abuse of his position of authority over another in his care, LFUCG viewed him as unqualified to fulfill his duties as a corrections officer. Citing provisions of the parties' collective bargaining agreement and the Division of Community Corrections Policy and Procedure manual, LFUCG advised that Director Haney recommended Lowe's dismissal. LFUCG documented that upon the request of FOP, Lowe's counsel had agreed to accept written notice of Lowe's termination. LFUCG reminded counsel that Lowe had five (5) calendar days to schedule a meeting with Director Haney regarding the termination. On November 8, 2017, the internal affairs investigation was completed based upon the entry of the judgment of conviction. Lowe executed a FOP grievance report form on November 9, 2017.

On November 14, 2017, John W. Maxwell, LFUCG's director of human resources, corresponded with Lowe's counsel. Maxwell denied that LFUCG had acted outside its authority when it placed Lowe on leave without pay following his arrest on felony charges. He indicated that "Lowe and [FOP] had 10 days to file a grievance from his notification of being on unpaid leave if he felt such action was unfair." Having failed to do so, Maxwell opined that they were not authorized to do so now. With respect to Lowe's dismissal, Maxwell indicated

that he had been terminated pursuant to an express provision of the Policy and Procedure Operations Manual. Maxwell denied the grievance.

Pursuant to provisions of the parties' collective bargaining agreement and Lowe's written request delivered two days after Maxwell denied the grievance, the dispute was set for non-binding arbitration. A hearing was conducted on June 30, 2018. The arbitrator received evidence, heard testimony, and considered the written and oral arguments of counsel. On August 31, 2018, an advisory decision was entered.

The arbitrator determined that Lowe had failed to timely file a grievance in accordance with the express provisions of the parties' collective bargaining agreement concerning LFUCG's decision to put him on leave without pay. The arbitrator also determined that Lowe had failed to file a timely grievance with respect to his dismissal. Consequently, the arbitrator concluded that issues related to LFUCG's decision to place Lowe on leave without pay -- and later to terminate his employment -- were not arbitrable under the terms of the parties' collective bargaining agreement.

On October 10, 2018, Lowe and FOP filed an action against LFUCG in Fayette Circuit Court for breach of contract. They alleged that LFUCG had placed Lowe on leave without pay and then dismissed him in contravention of the express terms of the parties' collective bargaining agreement. They sought Lowe's

-7-

reinstatement and recovery of his backpay; the value of his accrued vacation and holiday pay; and attorneys' fees and costs.

Without filing an answer, LFUCG filed a motion to dismiss. LFUCG argued that the terms of the parties' collective bargaining agreement provided the sole and exclusive means of resolving their disputes culminating in the arbitration process. Having exercised their right to participate in arbitration, LFUCG contended that Lowe and FOP had exhausted their exclusive remedy and that the circuit court lacked authority to consider the claims asserted. Lowe and FOP denied that the parties' collective bargaining agreement foreclosed their access to the courts. They argued that its terms merely required exhaustion of their contractual remedies before either party could seek judicial relief.

By its order entered December 14, 2018, the circuit court denied the motion to dismiss. LFUCG answered the complaint and denied liability. The circuit court denied a subsequent motion filed by LFUCG to hold the matter in abeyance.

On September 3, 2019, Lowe and FOP filed a motion for summary judgment. They argued that LFUCG had breached the unambiguous terms of the parties' 2012 collective bargaining agreement when it placed Lowe on leave without pay. They contended that the only provision of the 2012 agreement related to a member's suspension from pay distinguished a suspension from pay from a

suspension from law enforcement power and reserved to LFUCG only the right to suspend a member's law enforcement powers during the course of an investigation. The more recently negotiated collective bargaining agreement of 2015 specifically authorized LFUCG to place a member charged with a crime on a leave of absence without pay. However, the 2012 contract governing Lowe's leave of June 2014 plainly did not. Lowe and FOP contended that Lowe was entitled to recover the value of his wages and benefits due between June 5, 2014, and October 26, 2017, as a matter of law.

Lowe and FOP also argued that LFUCG violated the provisions of the collective bargaining agreement by dismissing Lowe without notice of the proposed discipline. Pursuant to Article 14, Section 4 of the 2015 collective bargaining agreement, "[d]isciplinary actions of suspension or dismissal shall be initiated by the delivery of proposed disciplinary action to a member." Lowe and the FOP contend that Lowe's due process rights under the agreement were not triggered by Director Haney's summary dismissal of October 26, 2017. Because the lack of notice and summary dismissal directly violated the terms of the parties' agreement, Lowe and FOP argued that Lowe was entitled to reinstatement and an award of backpay and benefits from October 26, 2017.

Additionally, Lowe and FOP contended that LFUCG breached the terms of the collective bargaining agreement by failing to conduct a disciplinary

hearing before Lowe was dismissed on October 26, 2017. They cited Article 14, Section 4 of the 2015 collective bargaining agreement, which provides in mandatory language that the director "shall meet with the member, and if requested, a Lodge representative" where "the member shall be advised of the level of discipline proposed to be issued." The member and/or the Lodge representative "shall be given the opportunity to present the member's side of the matter and any materials relating to the violation he wants the Director to consider prior to issuing discipline." Lowe recounted that neither he nor the FOP was aware of Lowe's dismissal **until eight days after** Director Haney executed the termination notice and personnel action request. Lowe was not provided an opportunity to explain the circumstances of his arrest nor the basis of his *Alford* plea before he was dismissed. He was not afforded an opportunity to present favorable evidence -- including the results of two polygraph examinations. Lowe and FOP argued that Lowe was entitled to judgment as a matter of law to include his reinstatement and an award of backpay and benefits since October 26, 2017, on this basis as well.

Next, Lowe and FOP argued that LFUCG dismissed Lowe without just cause in violation of industrial due process principles. They argued that the internal affairs division did not conduct an adequate investigation and that the report was not available for review by Director Haney for more than ten days following his decision to dismiss Lowe.

Finally, Lowe and FOP contended that LFUCG failed to reimburse Lowe for accrued vacation, holiday, and sick leave. They argued that Lowe was entitled to recover these benefits as a matter of law.

LFUCG filed a response and a competing motion for summary judgment on September 27, 2019. LFUCG again argued that the exclusive remedy for the violation of any of the terms of the parties' collective bargaining agreement is the grievance procedure outlined in the contract. It asserted that despite the non-binding nature of the arbitration proceedings, the proceedings had provided Lowe with all the process required by the terms of the agreement and that the court lacked authority to entertain his complaint. LFUCG argued that it was entitled to judgment as a matter of law upon this basis.

LFUCG also argued that the grievance was not timely initiated. LFUCG explained that the terms of the parties' collective bargaining agreement provided that grievances "shall, within ten (10) days of the grieved event, be presented to the Bureau Manager (Major)." It noted that Lowe had been suspended without pay on June 5, 2014, but he failed to file a grievance until November 9, 2017 -- years after the deadline had passed. With respect to the agreement's provision concerning a mandatory meeting with the director prior to the imposition of a disciplinary measure, LFUCG argued that if a member fails to attend the meeting, "discipline shall be issued and shall be final" pursuant to the

provisions of the collective bargaining agreement. LFUCG cited the written notice from counsel for LFUCG dated June 10, 2014, which reiterated that Lowe would remain on administrative leave without pay until the criminal charges were resolved and that he would be dismissed if convicted. LFUGG claimed that that notice constituted a final decision and that the time for Lowe to file a grievance with respect to his dismissal expired on June 21, 2014. Referring again to the arbitration decision rendered on August 31, 2018, LFUCG argued that the arbitrator's conclusion that the grievance was untimely was entitled to deference.

Additionally, LFUCG argued that it was entitled to judgment because it had complied with each of the relevant provisions of the collective bargaining agreement. It contended that Major Kammer's memorandum of June 5, 2014, indicating that Lowe was being placed immediately on unpaid leave and recommending Lowe's dismissal, constituted the delivery of proposed discipline required by the terms of the parties' collective bargaining agreement. It argued that the responsibility for the failure of the director to host a meeting after delivery of the proposed discipline as mandated by the agreement "falls squarely on [Lowe]." It claimed that Lowe's misdemeanor convictions established just cause for his dismissal.

Finally, LFUCG contended that Lowe had received all the compensation to which he was entitled. It argued that Lowe was not entitled to

accumulate sick or vacation time under the provisions of the employee handbook because his leave without pay had lasted for more than one month. It also argued that the arrears that had accumulated with respect to his contribution toward medical, dental, and vision benefits exceeded the value of the sick and vacation leave that he had accumulated prior to his dismissal.

Lowe and FOP filed a timely reply in support of their motion for summary judgment. They denied that the court lacked authority to entertain the action. They argued that the grievance filed on November 9, 2017, was timely because it was filed within seven (7) days of the grieved event. They argued that the grievance also timely challenged Lowe's dismissal of November 3, 2017. They cited deposition testimony of Director Haney admitting that the grievance had been timely filed. Lowe and FOP challenged LFUCG's assertion that the burden of scheduling a discipline hearing before he was dismissed on October 26, 2017, fell to Lowe. They also rejected LFUCG's reliance upon the provisions of the employee handbook because the handbook referred only to *voluntary* administrative leave, predated the collective bargaining agreement, and was superseded by it. Lowe and FOP denied that LFUCG could collect the alleged arrearages connected with his healthcare benefits because it had failed to file a counterclaim.

In an opinion and order entered on November 21, 2019, the Fayette Circuit Court determined that the lawsuit had been filed pursuant to the provisions of KRS[1] 67A.6908 authorizing legal actions for violation of agreements between an urban-county government and a labor organization representing corrections personnel to be brought by the parties to the agreement in circuit court. It concluded that the terms of the parties' 2012 collective bargaining agreement did not contemplate the imposition of leave without pay as a disciplinary measure and that LFUCG breached the agreement by placing Lowe on administrative leave without pay from June 5, 2014, through October 26, 2017. It also concluded that LFUCG failed to provide Lowe with an adequate opportunity to present his side of the matter before he was dismissed on October 26, 2017, in contravention of the doctrine of industrial due process. The court gave an excellent summary of the pertinent labor law as follows:

> Under Article 14, Section 1 of the 2015 [collective bargaining agreement] "LFUCG has a right to discipline members only for just cause." Just cause is a legal term of art that has a unique meaning in the labor relations context. *Griffith v. Fed. Labor Relations Auth.*, 842 F2d 487, 498 (D.C. Cir. 1988). Just cause requires that certain procedural due process requirements are met. *See* F. Elkouri & E. Elkouri, *How Arbitration Works*, 967-68 (6th ed. 2003). This has developed into a doctrine of industrial due process which requires management[:] (1) give the employee "adequate opportunity to present his or her side of the case before being discharged," and (2)

---

[1] Kentucky Revised Statutes.

"conduct a reasonable inquiry or investigation before asserting punishment." *Id.* at 967, 969.

Order Granting Summary Judgment, p.4. (Page 1037 of the record.)

The court granted summary judgment in favor of Lowe and FOP and awarded Lowe the value of his wages and benefits between June 5, 2014, and October 26, 2017, as well as backpay and the value of his benefits since October 26, 2017. This appeal followed.

On appeal, LFUCG argues that the Fayette Circuit Court erred by failing to grant its motion to dismiss and by granting summary judgment in favor of FOP and Lowe. It presents four arguments. First, it contends that Lowe has no recourse to the courts because his employment with LFUCG is governed by the parties' collective bargaining agreement, which provides that his sole remedy for an alleged breach of his contractual rights is the grievance procedure set out in the agreement. Second, LFUCG argues that the circuit court erred by concluding that Lowe was not afforded an opportunity to present his side of the matter as mandated by the terms of the parties' collective bargaining agreement. Third, LFUCG also contends that the circuit court erred by failing to address the timeliness of the grievance as it related to its decision to place Lowe on leave without pay. Fourth, LFUCG argues that the court erred by concluding that Lowe was entitled to damages. We shall address the issues in the order in which they were presented.

-15-

LFUCG argues first that the circuit court was without authority to entertain an action based on the alleged breach of the terms of the parties' collective bargaining agreement. We disagree.

Circuit courts exist by virtue of Section 109 of the Constitution of Kentucky, and they are vested with general jurisdiction. Section 112(5) of the Kentucky Constitution grants circuit courts "original jurisdiction of all justiciable causes not vested in some other court." *See also* KRS 23A.010 and *Gordon v. NKC Hosps., Inc.*, 887 S.W.2d 360 (Ky. 1994). The action filed by Lowe and FOP involves an ordinary claim for breach of contract to be heard in the circuit court. However, LFUCG submits that the claims of Lowe and FOP are to be evaluated *exclusively* under the grievance procedure provisions of the collective bargaining agreements. Thus, LFUCG appears to mount a challenge to the particular-case jurisdiction of the circuit court.

LFUCG concedes that procedures related to the discipline of a member are specifically outlined by the provisions of the agreements, including notice of any proposed discipline; an opportunity to meet with the director of human resources prior to a discipline decision; the ability to file a grievance based upon the disciplinary decision; and the option of submitting the dispute to non-binding arbitration. However, it highlights language included in the collective bargaining agreement indicating that "[a]ny dispute concerning the interpretation

-16-

or application of an express provision of this agreement shall be subject exclusively to this grievance procedure"; and that "[t]he procedure contained in this article is the sole and exclusive means of resolving all disciplinary actions and/or grievances arising under this Collective Bargaining Agreement"; and that "[t]he grievance and arbitration provision shall be the sole remedy for all grievances which are qualified subject matter for arbitration." It contends that provisions of the agreements relating to disciplinary disputes afford members procedural due process and that the agreements' exclusivity language forecloses Lowe's access to the courts following a non-binding arbitration decision. It cites our decision in *River City Fraternal Order of Police Lodge 614, Inc., v. Louisville/Jefferson County Metropolitan Government*, 585 S.W.3d 258 (Ky. App. 2019), in support of its position.

The facts recited in *River City* indicate that Officer Kristin Shaw was dismissed following her off-duty physical altercation with another law enforcement officer. Shaw challenged her dismissal. In a separate proceeding, FOP challenged the government's dismissal procedure, arguing that it had breached provisions of the parties' collective bargaining agreement. The agreement provided, in relevant part, that "[a]ny controversy between Metro Government and [FOP] concerning the meaning and application of any provisions of this Agreement shall be adjusted in the manner set out below." It continued as follows: "The [FOP] or any Member

-17-

may file a grievance and shall be afforded the full protection of this agreement[.]" *River City*, 585 S.W.3d at 263 (emphasis omitted).

FOP submitted its breach-of-contract claims against the government to "advisory arbitration" as permitted by the agreement's provisions. The parties selected an arbitrator and an evidentiary hearing was conducted. The arbitrator was asked to evaluate the government's decision to present a chart of Shaw's entire disciplinary history to the chief of police before she was dismissed and to the Louisville Metro Police Merit Board before it concluded its review of the dismissal.

Following the hearing, the arbitrator concluded that the government had breached provisions of the collective bargaining agreement by presenting Shaw's entire disciplinary record to the decision-makers. The arbitrator stated that a review of Shaw's entire disciplinary record included a review of stale disciplinary action. He indicated that such a review may have tainted the decision to dismiss her. In his opinion, the arbitrator proposed that the government should stop providing stale disciplinary information to the chief of police and to the merit board in future proceedings. He also stated that "consideration for mitigating this discharge to the lesser penalty of suspension would be appropriate." *Id.* In deference to the opinion of the arbitrator, the government did consider reducing

Shaw's termination to suspension -- but decided against it. FOP then filed an action in Jefferson Circuit Court.

In circuit court, the government moved to dismiss, arguing that the court lacked jurisdiction to consider Shaw's termination because the disciplinary action was being considered in a separate proceeding in a different division of circuit court pursuant to an express provision in the collective bargaining agreement. The Jefferson Circuit Court concluded that the government had complied with the arbitrator's suggestions and that the terms of the parties' collective bargaining agreement gave the merit board sole authority to resolve all disciplinary disputes between FOP members and the government. It dismissed the complaint.

On appeal, we considered the merits of the dispute. We rejected FOP's argument that the circuit court was **bound** to accept the decision of the arbitrator because to do so would, in effect, convert *advisory arbitration* to *binding arbitration* in contravention of the terms of the parties' collective bargaining agreement. We held that an appeal to circuit court "must be more than the rubber stamp of an 'advisory arbitration opinion and award[,]'" and we affirmed the decision of the circuit court. 585 S.W.3d at 267.

LFUCG argues that the "River City [collective bargaining agreement] contains nearly identical language making advisory arbitration the exclusive

remedy for a contract violation as the [agreement] in contention here." It contends

that our decision in *River City* stands for the proposition that FOP may agree to an

advisory arbitration process that would thereby deprive the courts of authority to

entertain a civil action aimed at reviewing the process, prospectively foreclosing a

member's access to the courts. That is clearly not the holding of *River City*. Nor is

it in harmony with Section 112(5) of the Constitution of Kentucky as noted earlier

in this opinion.

Our review in *River City* included a consideration of the matter **on its

merits**. We did not hold that the circuit court lacked particular-case jurisdiction or

that it was deprived of authority to entertain the breach-of-contract action based on

the parties' agreement to submit their disputes to non-binding arbitration. The

circuit court's conclusion that FOP was not entitled to a judicial remedy on the

merits did not mean that it was not entitled to seek one. Our decision did not

foreclose FOP's right to pursue a remedy in the courts. Consequently, our holding

in that case is irrelevant to LFUCG's claim on this point.

The parties' collective bargaining agreements do provide variously:

that disputes concerning the interpretation or application of an express provision of

the agreement is subject exclusively to the grievance procedure; that the grievance

procedure is the exclusive means by which disciplinary disputes can be resolved;

and that the grievance and arbitration provisions are the **exclusive remedy for all**

**grievances.** However, these provisions are generally construed as exhaustion-of-administrative-remedies provisions and not as restrictions on a parties' access to the courts. *See Jenkins v. South Bend Community School Corp.*, 982 N.E.2d 343 (Ind. Ct. App. 2013) (despite the "exclusive remedy" provision of the parties' collective bargaining agreement, the advisory nature of the arbitrator's award allows the non-prevailing party to reject the award, triggering judicial review); *Shorey v. Jefferson County School Dist. No. R-1*, 807 P.2d 1181 (Colo. Ct. App. 1990), *aff'd*, 826 P.2d 830 (Colo. 1992) (a collective bargaining agreement containing a grievance procedure which provides for advisory arbitration cannot be interpreted so as to limit a grievant to advisory arbitration as her exclusive remedy).

Moreover, the provisions of KRS 67A.6908(3) declare expressly that an action for breach of agreements between an urban-county government and a labor organization representing corrections personnel may be brought by the parties to the agreements in circuit court. Article 2 of the parties' 2015 collective bargaining agreement provides that the agreement "is subject and subordinate to all applicable statutes . . . ."

Finally, we are not at all persuaded that the grievance provisions of the collective bargaining agreements between FOP and LFUCG constitute a specific and unambiguous waiver of Lowe's individual right to a judicial forum.

Section 14 of the Constitution of Kentucky provides that "[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Lowe's right to seek a judicial remedy unambiguously exists separately and apart from the grievance procedure outlined by the parties' collective bargaining agreements. Lowe filed a civil action in circuit court pursuant to his individual, constitutional right to do so. FOP's act of executing the collective bargaining agreements did not preclude Lowe from exercising his right of access to our courts. Furthermore, the terms of the parties' agreements expressly confine the right to pursue non-binding arbitration to FOP. Lowe was not authorized by the terms of the collective bargaining agreements to seek arbitration. For these reasons, the "exclusive remedy" provisions in the parties' collective bargaining agreements could in no way limit Lowe's ability to seek judicial relief.

We conclude that the "exclusive remedy" provisions of the parties' agreements did not divest Lowe of his individual right to file a civil action, nor did it deprive the court of particular-case jurisdiction or authority to entertain the action. Therefore, the Fayette Circuit Court did not err by denying LFUCG's motion to dismiss the action.

For its second argument, LFUCG contends that the circuit court erred by concluding that Lowe was not afforded an adequate opportunity to present his side of the matter as required by the provisions of the parties' collective bargaining agreements. Our rules of practice are clear. CR[2] 76.03(4) mandates that an appellant "shall file. . . a prehearing statement" that identifies "issues proposed to be raised on appeal . . . ." CR 76.03(8) provides that "[a] party shall be limited on appeal to issues in the prehearing statement except that when good cause is shown the appellate court may permit additional issues to be submitted upon timely motion." We may not consider arguments presented to challenge a trial court's judgment where they have not been raised in the prehearing statement or on motion. *See Sallee v. Sallee*, 142 S.W.3d 697 (Ky. App. 2004).

The prehearing statement filed by LFUCG identifies the issues proposed to be raised on appeal as follows:

> LFUCG contends that the grievance was untimely and that the "exclusive remedy" language, found throughout the collective bargaining agreement, bars suit is [sic] this matter. As such, LFUCG was entitled to summary judgment. Furthermore, the appellant [sic] has received all monies owed to him by LFUCG.

This issue contested the circuit court's conclusion that Lowe was not afforded the opportunity to present his side of the matter as mandated by the parties' agreement.

---

[2] Kentucky Rules of Civil Procedure.

However, this issue was not raised either in the prehearing statement or by timely motion seeking permission to submit the issue for good cause shown. CR 76.03(8). Therefore, this specific issue is not properly before the Court for our review. We are precluded from reviewing it. *Sallee*, *supra*.

In its third argument, LFUCG contends that the circuit court erred by granting summary judgment in favor of Lowe and FOP because Lowe failed to file a timely grievance with respect to its decision to place him on leave without pay. We disagree.

Summary judgment is proper where there exists no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. CR 56.03. "[T]he construction and interpretation of a contract . . . are questions of law to be decided by the court . . . ." *Frear v. P.T.A. Industries, Inc*., 103 S.W.3d 99, 105 (Ky. 2003) (citing *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000)).

There is no genuine issue with respect to the facts underlying the parties' dispute. LFUCG claims that its notice to Lowe on June 5, 2014, that he was being placed immediately on leave without pay was proper. LFUCG cites to provisions of the parties' collective bargaining agreement that require that a grievance be presented within ten (10) days of the grieved event. It argues that the grievance filed by Lowe on November 9, 2017, came "well beyond the June 15,

2014 deadline." Additionally, LFUCG argues that under the terms of the parties' collective bargaining agreements, the decision to suspend Lowe without pay "issued and [became] final" once he failed to attend a meeting with the director of Community Corrections.

Relying on the opinion of the arbitrator that the grievance was untimely, LFUCG also contends that the circuit court erred by failing to accord the arbitrator's decision substantial deference. However, this proposed issue was also not identified in the prehearing statement filed by LFUCG nor by timely motion seeking permission to submit the issue for good cause shown. CR 76.03(8). Therefore, this issue is not properly before the Court for review. We decline to consider this part of the argument further.

The parties agree that the terms of the 2012-2016 collective bargaining agreement govern the disciplinary action taken against Lowe on June 5, 2014. Article 14, Section 2 of the agreement identifies four disciplinary measures: oral warning, written reprimand, suspension, and dismissal. It does not mention "leave without pay"; "administrative leave"; or "administrative leave without pay."

Article 14, Section 4 provides that disciplinary actions of suspension or dismissal **shall** be initiated by the delivery of *proposed* disciplinary action to a member. Section 4 mandates that the director of Community Corrections, or his designee, meet with the member and, if requested, with the FOP representative. At

the meeting, the member must be advised again of the level of discipline *proposed* to be issued. The member or his FOP representative must be afforded an opportunity to present the member's "side of the matter and any materials relating to the violation he wants the Director to consider *prior to issuing discipline*." Article 14, Section 4 (emphasis added). Section 4 provides that in the event the member fails to attend the meeting, "discipline shall be issued and shall be final." *Id.* Article 14, Section 5 requires that suspension or dismissal be issued *by the director*. If the member cannot receive the discipline in person, Section 5 requires that a written copy of the discipline be sent by certified mail to the member's last provided address. "The date postmarked shall be considered the date that the discipline was received." Article 14, Section 5(A). The agreement provides that the grievance and arbitration procedure described in Article 11 may be invoked by FOP "[u]pon receipt of the discipline by the member." *Id.*

With respect to the imposition of suspension or dismissal, "the grievance shall begin at the level of the Human Resources Director (Step 3 of the Grievance procedure) and shall proceed as provided in Article 11." *Id.* Step 3 of the grievance procedure is identified in Section 2 of Article 11 of the parties' agreement. It provides that where a settlement cannot be reached at the meeting between the member and the director of Community Corrections, the FOP representative or a legal representative "shall present the grievance in writing to

the director of Human Resources" within ten (10) days from receipt of a written response from the director of Community Corrections. Article 11, Section 2. The director of Human Resources "shall make a determination in writing within thirty (30) days." *Id.* If the grievance is not presented within ten (10) days, "the appeal to the Director of Human Resources shall be deemed waived." *Id.* If the director of Human Resources fails to render a decision in writing within thirty (30) days, "the grievance shall be considered satisfied in favor of the grievant." *Id.* Step 4 describes the process by which FOP may seek advisory arbitration. *Id.*

Article 11, Section 3 broadly provides that where a grievance is not presented within the specified time limits, the grievance will be considered waived. Article 11, Section 4 indicates that "the procedure contained in this article is the sole and exclusive means of resolving all disciplinary actions and/or grievances arising under this Collective Bargaining Agreement."

It is clear from the sequence of LFUCG's interactions with Lowe that LFUCG failed to follow the procedures outlined by the terms of the parties' collective agreement by which it could suspend Lowe. Nor did it follow the procedures by which the dispute concerning his suspension could be resolved. The memorandum provided to Lowe by Bureau Manager Kammer on June 5, 2014, described his discipline as "leave without pay." However, there exists no such disciplinary measure under the terms of the parties' 2012 - 2016 collective

bargaining agreement. Moreover, a member's suspension must be initiated by the delivery of *proposed* disciplinary action. Kammer's memorandum provides for Lowe's *immediate* suspension.

Kammer advised Lowe in the memorandum that Lowe could make a request -- within 24 hours -- for a meeting with the director. However, the terms of the parties' collective bargaining agreement mandate that the director of Community Corrections conduct a meeting with the member during which the member must be advised again of the level of discipline *proposed* to be issued and that the member must be afforded an opportunity to present a defense and any materials relating to the violation he wants the director to consider *prior to issuing discipline*.

The terms of the parties' collective bargaining agreement do not put the burden on the member to schedule a meeting with the director. Moreover, the required meeting must be conducted to discuss the **proposed** discipline -- not discipline that has already been imposed upon the member. Finally, terms of the parties' agreement require that suspension or dismissal be issued *by the director* and delivered to the member in a specifically prescribed manner. The correspondence of June 10, 2014, from LFUCG's counsel, written in response to correspondence from Lowe's counsel, wholly fails to comply with these requirements.

-28-

LFUCG's failure to observe the procedures that it was obligated to follow prior to placing Lowe on leave without pay made it impossible for FOP or Lowe to initiate the grievance procedure set forth in the parties' collective bargaining agreement. Where a settlement cannot be reached during the meeting between the member and the director of Community Corrections, FOP or a member's legal representative is required by the terms of the parties' agreement to present a grievance in writing to the director of human resources. The written grievance must be submitted within ten (10) days from the receipt of a written response from the director of Community Corrections. The director of Community Corrections did not conduct the required meeting with Lowe. Consequently, Lowe never received the director's written response to any discussion. He lacked a writing that would trigger the grievance procedure.

It was not until November 14, 2017, when LFUCG's director of human resources corresponded with Lowe's counsel, that the grievance procedure began to track or reflect the mechanism that the parties had agreed was "the sole and exclusive means of resolving all disciplinary actions and/or grievances arising under this Collective Bargaining Agreement." In his correspondence, Director Maxwell explained to counsel that LFUCG acted properly when it placed Lowe on leave without pay on June 5, 2014. Finally, with this written decision at long last

provided, Lowe was in position to request that the issues be submitted to advisory arbitration. He did so in timely fashion.

There were no genuine issues of material fact, and the Fayette Circuit Court did not err by concluding as a matter of law that Lowe and FOP complied with the provisions of the grievance procedure and that LFUCG breached the unambiguous terms of the collective bargaining agreement. Consequently, Lowe and FOP were entitled to judgment as a matter of law.

In its fourth and final argument, LFUCG argues that the court erred by concluding that Lowe was entitled to damages. It reasserts its contentions that the circuit court was without jurisdiction to entertain the civil action and that it did not breach the terms of the parties' collective bargaining agreements. However, we have rejected those arguments.

In the alternative, LFUCG argues that Lowe was not entitled to damages because he was dismissed for just cause. Taking into account the relevant additions to the parties' collective bargaining agreement, we assume that LFUCG could now impose leave without pay and dismissal upon a member's arrest on felony sex abuse charges. However, those changes have no bearing upon this matter. Furthermore, the obligation of LFUCG to conform its disciplinary procedures to the provisions of its agreement with FOP is not eliminated because of the heinous nature of a member's alleged conduct.

Having concluded that LFUCG breached the parties' agreements, the trial court did not err by awarding contract damages. Contract damages compensate an injured party. In Kentucky, the general "measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (quoting *Perkins Motors, Inc. v. Autotruck Federal Credit Union*, 607 S.W.2d 429, 430 (Ky. App. 1980)). Lowe proved his damages with reasonable certainty. *See Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399 (Ky. 1985). There was no error.

We AFFIRM the judgment of the Fayette Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

J. Todd Henning
Lexington, Kentucky

BRIEF FOR APPELLEES:

Scott A. Crosbie
Lexington, Kentucky

Nicholas A. Oleson
Lexington, Kentucky